UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NELSON RODRIGUEZ,

                             Petitioner,

      -vs-

WILLIAM P. BARR, United States
Attorney General; and JEFFREY J.
SEARLS, Director of the Buffalo
Federal Detention Facility,

                            Respondents.

**No. 6:18-cv-06757-MAT**
**DECISION AND ORDER**

---

## I. Introduction

Proceeding *pro se*, Nelson Rodriguez ("Rodriguez" or "Petitioner") commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("§ 2241") challenging his continued detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS").[1] For the reasons discussed below, the request for a writ of habeas corpus is denied, and the Petition (Docket No. 1) is dismissed.

## II. Factual Background & Procedural History

Rodriguez is a citizen and national of El Salvador. He was last admitted to the United States on December 13, 1983, on an IR-2

---

[1] The Clerk of Court is directed update the case caption pursuant to Rule 25(d) of the Federal Rules of Civil Procedure so as to reflect that William P. Barr has assumed the role of United States Attorney General, replacing Acting Attorney General Matthew Whitaker. In addition, the Clerk of Court is directed to amend the caption to reflect the correct spelling of the other defendant's name is "Searls" not "Seals."

immigrant visa. *See* Declaration of Joseph Marchewka ("Marchewka Decl.") ¶ 5. On or about March 13, 2009, a grand jury in Kings County, New York State indicted Rodriguez on eleven counts including one count of Rape in the First Degree (N.Y. Penal Law ("P.L.") § 130.35(3)), six counts of Sexual Abuse in the First Degree (P.L. § 130.65(3)), three counts of Committing a Criminal Sexual Act in the First Degree (P.L. § 130.50(3)), and one count of Endangering the Welfare of a Child (P.L. § 260.10(1)). Marchewka Decl. ¶ 6.

On November 4, 2010, Rodriguez pleaded guilty to one count of Sexual Abuse in the First Degree (P.L. § 130.65(3)), and one count of Endangering the Welfare of a Child (P.L. § 260.10(1)). Rodriguez was sentenced to, among other restrictions, ten years of probation on the first conviction and three years of probation on the second conviction. Marchewka Decl. ¶ 7. On January 19, 2012, a judge in Kings County New York found that Rodriguez had violated the conditions of his probation and accordingly resentenced him to concurrent terms of two years in prison for the first-degree sexual abuse conviction and one year in prison for the endangering the welfare of a child conviction. *Id.* ¶ 8.

On February 29, 2016, DHS encountered Rodriguez while he was undergoing routine screening at a drug treatment center. Marchewka Decl. ¶ 9. Rodriguez was not in DHS custody at that point.

On or about April 22, 2016, DHS reviewed Rodriguez's file to ascertain whether he had derivative citizenship. *Id.* ¶ 10. The records revealed that Rodriguez's biological mother and father both were born in El Salvador and that his mother never naturalized as a United States citizen. *Id.* Although Rodriguez's stepfather was a citizen and national of the United States, there was no evidence that he had ever legally adopted Rodriguez. *Id.* DHS accordingly concluded that there were no derivative citizenship issues presented by Rodriguez's case. *Id.*

Consequently, on August 24, 2016, DHS served Rodriguez with a Notice to Appear, charging him with being subject to removal from the United States for having been convicted of an aggravated felony pursuant to 8 U.S.C. §§ 1101(a)(43)(A), 1227(a)(2)(A)(iii), as well as a crime of child abuse, neglect, or abandonment pursuant to 8 U.S.C. § 1227(a)(2)(E)(i). *See* Marchewka Decl. ¶ 11.

On January 13, 2017, Rodriguez was taken into Federal custody, and DHS determined that he should be retained him in custody. *Id.* ¶ 12. On June 28, 2017, Rodriguez had a custodial determination hearing before an immigration judge pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015) (as a matter of first impression, an immigrant detained pursuant to statute requiring mandatory detention of certain aliens awaiting removal proceedings must be afforded a bail hearing before an immigration judge within six months of his or her detention), *vacated*, 138 S. Ct. 1260 (2018).

The IJ denied Rodriguez's request to change his custodial status because the DHS had established that Rodriguez is a danger to the community. Marchewka Decl. ¶ 13. On November 9, 2017, the IJ judge found Rodriguez removable as charged. The IJ further found that, because of Rodriguez's aggravated felony conviction, he was statutorily ineligible for asylum or cancellation of removal for certain permanent residents; and that because Rodriguez had committed a particularly serious crime, he was ineligible for withholding of removal. *Id.* ¶ 14. In addition, the IJ declined to grant Rodriguez's request for deferral of removal to El Salvador under the regulations implementing the Convention Against Torture ("CAT"). *Id.* The IJ subsequently ordered that Rodriguez be removed to El Salvador. *Id.*

Rodriguez filed an appeal with the Board of Immigration Appeals ("BIA"). On April 2, 2018, the BIA dismissed his appeal. Marchewka Decl. ¶ 15. On April 13, 2018, Rodriguez filed a *pro se* petition for review with the United States Court of Appeals for the Second Circuit, along with an emergency motion for a stay of removal and a motion to appoint counsel. *Id.* ¶ 16; *see Rodriguez v. Barr*, 18-1070 (2d Cir. Apr. 13, 2018). On April 23, 2018, the United States Attorney General opposed Rodriguez's stay motion. *Id.*

On July 2, 2018, and October 19, 2018, DHS conducted additional custodial reviews and determined to continue Rodriguez's

detention. Marchewka Decl. ¶¶ 18-20. On October 22, 2018, Rodriguez filed the instant Petition.

On November 30, 2018, the Attorney General filed a motion with the Second Circuit to expedite adjudication of Rodriguez's stay motion. Marchewka Decl. ¶ 22. While this motion was pending, DHS conducted another custodial review on January 7, 2019, and determined that Rodriguez should remain in custody. *Id.* ¶ 23. On January 11, 2019, the Second Circuit granted the Attorney General's motion to expedite, granted Rodriguez's stay motion, and granted Rodriguez's request to appoint *pro bono* counsel. *Id.* ¶ 24. As of the date Respondent filed his Answer and Return in this action, Rodriguez's petition for review remains pending before the Second Circuit. Marchewka Decl. ¶ 26. The Second Circuit's docket indicates that Rodriguez's brief is due May 28, 2019. *See* Docket No. 82 in *Rodriguez v. Barr*, 18-1070 (2d Cir. Mar. 19, 2019).

Since being taken into DHS custody on January 13, 2017, Rodriguez has acquired eight disciplinary violations or incidents, all of which have resulted in an administrative conviction. Marchewka Decl. ¶ 27.[2] Rodriguez's next scheduled custodial review

---

[2] Those incidents include (1) interfering with a staff member in the performance of his or her duties on November 17, 2017; (2) refusing to obey an order of a staff member on November 17, 2017; (3) refusing to obey an order of a staff member on April 25, 2018; (4) exhibiting insolence toward a staff member on April 25, 2018; (5) interfering with a staff member in the performance of his or her duties on December 11, 2018; (6) refusing to obey an order of a staff member on December 11, 2018; (7) refusing to obey an order of a staff member on December 27, 2018; and (8) interfering with a staff member in the performance of his or her duties on December 27, 2018.

by the DHS was scheduled for March 28, 2019. *Id.* ¶ 30. Presumably, DHS decided to continue his administrative detention.

In his Petition ("Pet."), Rodriguez contends that DHS failed to investigate the possibility that he had derived citizenship. *See* Pet. ¶¶ 1, 6, 27, 31-33, 37. He also argues that he is entitled to release from DHS custody because he has not received regular reviews of his custodial status, he has been detained for an unreasonable period of time, and that his detention has no reasonably foreseeable endpoint. *See id.* ¶¶ 36-37, 39.

Jeffrey Searls, Director of the Buffalo Federal Detention Facility ("Respondent"),[3] filed an Answer and Return (Docket No. 13), along with the Marchewka Decl. and a Memorandum of Law in Opposition to the Petition (Docket No. 13-2) on March 18, 2019.

Rodriguez filed two Responses (Docket Nos. 15 & 16) on April 9, 2019, which extensively argue the merits of his petition for review regarding his removal order, an issue over which this Court no longer may exercise jurisdiction.[4] He also argues that his

---

[3] Searls is the only proper respondent in this § 2241 proceeding as he is the person with direct control over Petitioner's detention. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[I]n habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . .").

[4] The REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-

detention violates due process under *Zadvydas v. Davis,* 533 U.S. 678, 701 (2001). The matter was submitted without oral argument on May 2, 2019 (Docket No. 17).

**III. Discussion**

    **A.    The Court Lacks Jurisdiction to Consider the Derivative Citizenship Claim**

Rodriguez claims that he has a meritorious claim of derivative citizenship under the current version of 8 U.S.C. § 1431, effective February 27, 2001. Respondent argues that this statute is not retroactive and does not apply to Rodriguez, who was born on in June 1975, and thus was over age eighteen at the time the statute was enacted. The Court has no jurisdiction to consider Rodriguez's claim of derivative citizenship, which only may be raised before Second Circuit. *See, e.g., Bryan v. U.S. Citizenship & Immigration Servs.*, No. 1:12-CV-372, 2012 WL 2115914, at *2 (M.D. Pa. May 15, 2012) ("[R]equests by alien inmates to adjudicate claims of derivative citizenship fall beyond the habeas corpus jurisdiction of th[e] [District] Court. Instead, those claims must under the REAL ID Act be addressed to the court of appeals. Therefore, it is recommended that the instant petition for writ of habeas corpus, which presents a derivative citizenship claim, be dismissed without

---

16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88.

prejudice to the filing of a proper petition with the court of appeals."), *report and recommendation adopted*, No. 1:12-CV-372, 2012 WL 2115409 (M.D. Pa. June 11, 2012), *aff'd*, 506 F. App'x 150 (3d Cir. 2012).

**B. Petitioner's Continued Detention Does Not Violate the Constitution**

Rodriguez is an alien who was ordered deported because he committed an aggravated felony. When such an individual subsequently obtains a judicial stay of his administratively final removal order, 8 U.S.C. § 1226(c) ("Section 1226(c)"), and not 8 U.S.C. § 1231 ("Section 1231"), provides the authority for his continued detention in DHS custody. *See Hechavarria v. Sessions*, 891 F.3d 49, 53 (2d Cir. 2018) ("Hechavarria's detention is governed by 8 U.S.C. § 1226(c), the section of the INA that governs the detention of 'criminal aliens.' . . . We agree with Hechavarria and the amicus counsel that the plain language of the statute dictates that Hechavarria is detained pursuant to section 1226(c). We hold that section 1226(c) governs because he has obtained a stay of removal from this Court pending the disposition of his petition for review."), *as amended* (May 22, 2018). Section 1226(c) "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) (quoting 8 U.S.C. § 1226(c)(2)).

The Supreme Court distinguished the statutes at issue in *Jennings* from its interpretation of a different statute in *Zadvydas*, wherein it "invoked the canon of constitutional avoidance in interpreting the ambiguous language of Section 1231's detainment provision." *Hechevarria*, 891 F.3d at 58 (citing *Zadvydas*, 533 U.S. at 689). Finding that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem[,]" *Zadvydas*, 533 U.S. at 690, the Supreme Court determined that six months was a "presumptively reasonable period of detention." *Id.* at 701.

In *Jennings*, however, the Supreme Court deemed the canon of constitutional avoidance inapplicable to Section 1226(c) because "the meaning of the relevant statutory provisions is clear." *Jennings*, 138 S. Ct. at 848. The Supreme Court found it significant that Section 1226(c)(2) "does not on its face limit the length of the detention it authorizes. In fact, by allowing aliens to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute." *Id.* at 846. *Jennings* also rejected the argument that Section 1226(c)'s purported "silence" as to the length of detention required the Supreme Court to impute, as it did in *Zadvydas*, a 6-month time limit. *Id.* Instead, the Supreme Court found, Section

1226(c) is "*not* 'silent' as to the length of detention" because it "mandates detention 'pending a decision on whether the alien is to be removed from the United States,' § 1226(a), and it expressly prohibits release from that detention except for narrow, witness-protection purposes.'" *Id.* (emphasis in original). *Jennings* declined to interpret Section 1226(c)'s limited authorization for release for witness-protection purposes as holding open the possibility that other forms of release are permitted, 138 S. Ct at 846, finding that it "defies the statutory text" which "expressly stat[es] that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2)[.]" *Id.* at 846-47. The statute's use of this language "expressly and unequivocally imposes an affirmative prohibition on releasing detained aliens under any other conditions." *Id.* at 847.

In sum, contrary to Rodriguez's assertions, Section 1231 does not govern his detention, and *Zadvydas*'s implied 6-month temporal limit on detention is not applicable to habeas petitions filed by aliens who are detained pursuant to Section 1226(c), as he is. *See Sankara v. Whitaker*, No. 18-CV-1066, 2019 WL 266462, at *5 (W.D.N.Y. Jan. 18, 2019) ("Because Sankara is not detained under § 1231(a), this Court rejects his argument that his detention violates 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas* . . . ."); *Manley v. Delmonte*, No. 17-CV-953, 2018 WL 2155890, at *2 (W.D.N.Y. May 10, 2018) ("Because there is both a

time frame for detention and a foreseeable event triggering actual removal, the due process concern that warranted a bonding hearing in *Zadvydas* does not apply here."). As Rodriguez is clearly detained pursuant to Section 1226(c), and there is no suggestion that he has been or will be released for witness-protection purposes, this Court is without authority to terminate or modify his administrative detention in DHS custody. *See Jennings*, 138 S. Ct. at 847.

**IV. Conclusion**

For the reasons discussed above, Rodriguez's request for a writ of habeas corpus is denied, and the Petition is dismissed. The Court declines to order a certificate of appealability. The Clerk of Court shall close this case.

**SO ORDERED.**

S/Michael A. Telesca

---
   HON. MICHAEL A. TELESCA
   United States District Judge

Dated:   May 21, 2019
         Rochester, New York.